## DAVIS v. JACOBS.

Circuit Court of Appeals, First Circuit.
November 22, 1929.

No. 2350.

Albert Hurwitz, of Boston, Mass. (Hurwitz & Hurwitz, of Boston, Mass., on the brief), for appellant.

Joseph B. Jacobs, of Boston, Mass., for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

WILSON, Circuit Judge. The bankrupt is the wife of Nathan Davis. A business was being carried on in her name under a married woman's certificate required under the laws of Massachusetts. The entire charge and conduct of the business, however, was left to her husband, who contracted obligations in her name as her agent.

On or about March 12, 1927, Mary I. Da-

vis and her husband, Nathan Davis, each filed separate petitions in bankruptcy, and each was in due course adjudged a bankrupt.

 Several years before the filing of his petition, her husband transferred to her three policies of life insurance, which, so far as this case is concerned, must be regarded as a valid transfer, nothing appearing in the record to the contrary. The policies of insurance thus become the property of the wife, and any cash surrender value an asset for the benefit of her creditors in case of bankruptcy. In re Simmons et al. (D. C.) 253 F. 466.

About a month before the filing of her petition in bankruptcy, Mrs. Davis surrendered the policies for their cash value of approximately $1,000, receiving checks for the same payable to her order, which she indorsed over to her husband, who used a considerable portion thereof in the support of the family, and transferred to a brother, Phillip Davis, at least $350 of the sum so received, and which later found its way in a manner not disclosed by the record into a new company organized by the husband after his bankruptcy for the purpose of conducting a business of his own.

Neither of the policies nor the cash received therefor were included in the schedule of assets of either Mary I. Davis or her husband, Nathan Davis.

Upon Mrs. Davis petitioning for her discharge, the trustee objected on two grounds: (1) That the bankrupt had transferred certain accounts receivable of the business to one Forman to hinder, delay, and defraud creditors; and (2) that she had concealed the moneys received from the insurance policies with the same purpose in view.

██ The referee in bankruptcy, who was appointed a special master to hear those charges, found that both were true, and recommended that the bankrupt's discharge be withheld. The District Court, however, in considering the master's report, did not pass on the first objection, as the matter was then in litigation between the trustee and Forman to recover the accounts receivable, but refused the discharge on the second ground, viz. that the husband had clearly transferred a part of the sum obtained from the insurance policies to his brother for the purpose of hindering, delaying, and defrauding his wife's creditors, and, as the wife had intrusted the entire and absolute management of the business to her husband without any supervision on her part, she was responsible for the fraud on her creditors committed by him.

We think it is unnecessary to decide what the effect would have been on the wife's right to a discharge if the proceeds of the insurance policies had been a part of the assets of the business then being conducted by the husband in the wife's name; as it does not appear that the insurance policies or the proceeds thereof were ever a part of the assets of the business, nor does it affirmatively appear that the proceeds were turned over to him with any understanding or intent on her part that they were to be used in the business. The transfer to her husband of these funds for a purpose not specifically disclosed by the record, except so far as it may be inferred from the fact that a considerable portion was spent for household and family expenses, was, so far as the record shows, only an instance of a wife intrusting to her husband funds for personal and family use; and at most would not carry with it any authority beyond its use in discharging valid obligations.

The mere placing of funds by a wife in the hands of her husband, in whom she has confidence, for disbursement for their mutual benefit, involves no obligation as to supervision and control over the use of such funds in order to avoid liability in case of fraudulent use, of which use she has no knowledge, and in which she did not participate.

There is nothing in the record to show that Mrs. Davis knew or had any reason to suspect that her business creditors might be adversely affected by the disposition of these funds or that her husband intended fraudulently to divert any part of them from her creditors to his own personal advantage; or that she was guilty of such neglect as a wife as would render her liable for the fraudulent acts of her husband, of which she had no knowledge. On the contrary, the master found, and the court below accepted his findings, that there was nothing to indicate that she was at any time conscious of any wrongdoing; and that in each instance she merely passively assented to suggestions by her husband in all these matters.

So far, therefore, as the objection based on the transfer of the proceeds of the insurance policies is concerned, her discharge should be granted. Hardie v. Swafford Bros. Dry Goods Co. (C. C. A.) 165 F. 588, 20 L. R. A. (N. S.) 785; Gilpin v. Merchants' Nat. Bank (C. C. A.) 165 F. 607, 20 L. R. A. (N. S.) 1023; In re W. S. Peck Co. v. Lowenbein (C. C. A.) 178 F. 178; Ragan, Malone & Co. v. Cotton & Preston et al. (C. C. A.) 200 F. 546; In re Kerner (C. C. A.) 250 F. 993; In re Rosenfeld (C. C. A.) 262 F. 876; In re William Tirschler & Co. (D. C.) 18 F. (2d) 365.

938

The decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion; the appellant recovers costs of appeal.