In re Robert Clement PEERY, f/d/b/a Peery Construction Co., Debtor.

NASHVILLE CITY BANK & TRUST COMPANY, Plaintiff,

v.

Robert Clement PEERY, Defendant.

Bankruptcy No. 383–01014.
Adv. No. 383–0405.

United States Bankruptcy Court,
M.D. Tennessee.

June 12, 1984.

Charles W. McElroy, B. Anthony Saunders, Boult, Cummings, Conners & Berry, Nashville, Tenn., for Nashville City Bank.

C. Kinian Cosner, Jr., Cosner & Waldschmidt, Nashville, Tenn., for debtor.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

A creditor seeks to deny the debtor's discharge under 11 U.S.C.A. § 727(a)(2)(A) (West 1979). The issues are: (1) whether a testamentary devise is an "interest in property"; (2) whether renunciation of a devise constitutes a "transfer;" (3) whether a "relation-back" provision of state law affects the date of transfer; and (4) whether the renunciation was intended to hinder, delay or defraud creditors. After consideration of the briefs, arguments and stipulations, the court holds that the debtor's rights in a testamentary devise constitute an "interest in property," that the debtor's renunciation was a transfer of that interest, that the transfer occurred at the time of renunciation and within one year of bankruptcy, and that the debtor intended the renunciation to hinder, delay or defraud creditors.

The following constitute findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

The facts are stipulated. Robert Clement Peery ("debtor") was a beneficiary under the Last Will and Testament of his grandfather, Robert S. Clement. Upon his grandfather's death on October 21, 1981, the debtor became entitled to a 1/11th share in approximately 200 acres of real property and in an unspecified amount of personalty. The value of the real property was estimated in excess of $168,000.

The debtor was substantially indebted to Nashville City Bank & Trust Company ("Bank"). By letter dated June 12, 1982, the Bank demanded payment and on July 9, 1982, the Bank filed a collection action in state court. On July 15, 1982, the debtor executed and filed a "Partial Renunciation by Beneficiary" in accordance with TENN. CODE ANN. § 31–103,[1] renouncing all en-

---

1. Section 31–103 provides in relevant part:

(a) A person (or his personal representative) who is an heir, devisee, person succeeding to a renounced interest, beneficiary under a testamentary instrument or person designated to take pursuant to a power of appointment exercised by a testamentary instrument may renounce in whole or in part the succession to any property or interest therein by filing a written instrument within the time and at the place hereinafter provided. The instrument shall (i) describe the property or part thereof or interest therein renounced, (ii) be signed by the person renouncing and (iii) declare the renunciation and the extent thereof.

(b) The writing specified in (a) must be filed within nine (9) months after the death of the decedent or the donee of the power, or if the taker of the property is not then finally ascertained, not later than nine (9) months after the event by which the taker or the interest is finally ascertained. The writing must be filed with the court where the proceedings concerning the decedent's estate are pending, or where they would be pending if commenced and a copy shall be filed in the county register's office. A copy of the writing

titlement to the *real* property distributed under the will.[2] The ⅟₁₁th interest in real property the debtor would have received passed to the ten residual beneficiaries, all related to the debtor by either blood or marriage. The debtor received no consideration for the renunciation.

On April 20, 1983, the debtor filed a Chapter 7 petition. The Bank filed a timely complaint to deny the debtor's discharge and the matter was submitted on briefs and stipulated facts.

The Bank argues that the debtor's renunciation was a fraudulent transfer[3] justifying denial of discharge pursuant to 11 U.S. C.A. § 727(a)(2)(A) (West 1979). Section 727 provides in relevant part:

(a) The court shall grant the debtor a discharge, unless—

\*       \*       \*       \*       \*       ⸭

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition.

Under this subsection, a four-part inquiry is required: (1) whether a transfer of property occurred; (2) whether the property was the debtor's property; (3) whether the transfer was within one year of the date of the filing of the petition; and (4) whether the debtor had an affirmative intent to

hinder, delay or defraud creditors at the time the transfer was made. *First National Bank and Trust Co. v. Reed*, 18 B.R. 462, 463 (Bankr.E.D.Tenn.1982). The burden to prove each element is on the Bank. Bankruptcy Rule 4005. *See also First Federated Life Insurance Co. v. Martin*, 698 F.2d 883, 887 (7th Cir.1983).

### I. "PROPERTY OF THE DEBTOR"

■■■ The right to receive a testamentary devise is an interest in property. Under Tennessee law, the debtor acquired rights in the real property immediately upon the testator's death. *Doughty v. Hammond*, 207 Tenn. 545, 341 S.W.2d 713, 717 (1960) (appellant acquired a vested right under the will upon the death of the testator); *Bradford v. Leake*, 124 Tenn. 312, 137 S.W. 96, 100 (1911) (a beneficial devise is presumed accepted and the gift begins at the moment of the testator's death); *Goss v. Singleton*, 2 Head 67, 39 Tenn. 67 (1858). *See also In re Means*, 16 B.R. 775, 776 (Bankr.W.D.Mo.1982) (interest in real property vests in heirs at time of death). The right to receive the devise existed without further action by the debtor—no affirmative acceptance was required. Although title to and possession of the property could not be realized until formal distribution, an "interest in property" attached upon the death of the debtor's grandfather. "Property" under the Bankruptcy Code is not dependent upon title or possession. The right to control, direct or receive a testamentary distribution constitutes an "interest" in property.[4] *See O'Connor v.*

---

also shall be mailed to the personal representative of the decedent.

(c) Unless the decedent or donee of the power has otherwise indicated by his will, the interest renounced, and any future interest which is to take effect in possession or enjoyment at or after the termination of the interest renounced, passes as if the person renouncing had predeceased the decedent, or if the person renouncing is one designated to take pursuant to a power of appointment exercised by a testamentary instrument, as if the person renouncing had predeceased the donee of the power. In every case the renunciation relates back for all purposes to the date of

death of the decedent or the donee, as the case may be.

2. On August 23, 1983, the debtor received a $4,706.13 personal property distribution from his grandfather's estate.

3. The trustee has not brought an action to recover a fraudulent conveyance pursuant to 11 U.S.C.A. § 548 (West 1979). The court neither addresses nor decides any issue which might be raised by such an action.

4. Though the phrase "property of the debtor" in § 727(a)(2)(A) is not separately defined by the

# 814

O'Connor, 32 B.R. 626, 629 (Bankr.E.D.Pa. 1983) (power to revoke trust constitutes interest in property).

## II. "TRANSFER OF PROPERTY"

■ The debtor does not dispute that the renunciation was a "transfer." "Transfer" is broadly defined as:

Every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest.

11 U.S.C.A. § 101(41) (West 1979). The renunciation was a completely voluntary transfer of the debtor's right to receive the testamentary distribution. See Schaefer v. Fisher, 137 Misc. 420, 242 N.Y.S. 308, 314 (1930).

## III. "WITHIN ONE YEAR OF BANKRUPTCY"

■ The transfer occurred within one year of the filing of the debtor's bankruptcy petition. The debtor argues that although the renunciation was executed within one year of the filing of the petition, the renunciation relates back to the date of the testator's death—a date more than one year before the petition. TENN.CODE ANN. § 31–103(c) provides that "[i]n every case the renunciation relates back for all purposes to the date of death of the decedent or the donee, as the case may be." The debtor cites Tennessee case law for the proposition that:

The renunciation is not a voluntary conveyance, void as against existing creditors, because when he has properly renounced, the renunciation relates back to the date of the gift, and, as he has never accepted the gift, he has had nothing that could be made the subject of a voluntary conveyance.

Bradford v. Calhoun, 120 Tenn. 53, 109 S.W. 502, 504 (1908). See also Bradford v. Leake, 124 Tenn. 312, 137 S.W. 96, 100 (1911).

The debtor argues an almost mystical notion of a transfer separated in time from itself because a state statute prescribes that the transfer has certain retroactive

Bankruptcy Code, it is useful to analyze the phrase by reference to the section of the Code which defines the property interests of the debtor that would become "property of the estate" upon the filing of a petition in bankruptcy. This, of course, would not be appropriate in all situations because for some purposes the notions of "property of the estate" and "property of the debtor" are mutually exclusive. Compare, e.g., 11 U.S.C.A. §§ 362(a)(4) and (a)(5) (West 1979).

11 U.S.C.A. § 541(a)(1) (West 1979) brings into the bankruptcy estate "all legal or equitable interests of the debtor" subject only to a few enumerated exceptions. The scope of § 541 is broad and virtually all-encompassing. United States v. Whiting Pools, 462 U.S. 198, ___, 103 S.Ct. 2309, 2312, 76 L.Ed.2d 515, 521 (1983). See also Waldschmidt v. CBS, Inc., 14 B.R. 309 (M.D.Tenn.1981). The legislative history provides that:

The scope of this paragraph [§ 541(a)(1)] is broad. It includes all kinds of property, including tangible or intangible property.

H.R.Rep. No. 595, 95th Cong. 2d Sess. 37 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5998; S.Rep. No. 989, 95th Cong. 2d Sess. 82 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868. The comprehensive definition was intended to remedy the "complicated melange of references to state law" that existed in deter-

mining property interests under the Bankruptcy Act. H.R.Rep. No. 595, 95th Cong. 2d Sess. 75 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 6035; S.Rep. No. 989, 95th Cong. 2d Sess. 82 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868. Property under the Code includes any and all property regardless of whether it meets the tests of transferability or leviability imposed under pre-Code law. Hadley v. Koehler, 6 B.R. 203, 205 (Bankr.M.D.Fla.1980). A debtor's interest becomes property of the estate, though it be novel or contingent, and notwithstanding that enjoyment of the interest is postponed. See Segal v. Rochelle, 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966); In re Dunn, 5 B.R. 156, 159 (Bankr.N.D.Tex.1980).

[T]he term "property," as invoked in the definition of a "transfer" in the context of ... proscription of fraudulent transfers, should be interpreted "most generously" to incorporate anything of value which but for the transfer might have been preserved for the trustee for the ultimate benefit of the bankrupt's creditors.

Glosband v. Watts Detective Agency, Inc., 21 B.R. 963, 971 (D. Mass.1981). Further support for the holding in this case is found in 11 U.S.C. § 541(a)(5) which includes within the bankruptcy estate: "An interest in property ... that the debtor acquires ... within 180 days after [the petition] ... by bequest, devise, or inheritance."

effects. It is not the date of transfer for bankruptcy purposes that is regulated by the Tennessee legislature in TENN.CODE ANN. § 31–103(c). The Tennessee relation back statute does not erase the fact of a transfer of the debtor's vested rights at the time of the renunciation. Instead, relation-back is a legal fiction which defines the *consequences* of having property rights vest at death and then revest in others after a valid renunciation. Although relation-back may have significant nonbankruptcy effects on estate taxation and on the validity of creditors' liens interposed between death and renunciation, relation back does not change the time of transfer for purposes of § 727(a)(2). Section 727 gives creditors the special power to evaluate the debtor's affairs and actions in the year preceding bankruptcy. Legal fictions created for other purposes by state law cannot be used to defeat the express limitations periods created by the Bankruptcy Code. Renunciation may be "effective" for purposes of state law as of the date of the testator's death; however, the "transfer" of the debtor's rights and interests for purposes of the Bankruptcy Code took place on the date of renunciation, and within one year of the petition.

## IV. "INTENT TO DEFRAUD CREDITORS"

▮ The evidence demonstrates that the debtor renounced his interest under his grandfather's will with intent to hinder, delay or defraud his creditors.[5] To bar a debtor's discharge, intent must be *actual*, not merely constructive. *See, e.g., State Bank of Albany v. Martinez*, 31 B.R. 299, 301 (Bankr.D.Vt.1983); *In re Fragetti*, 24 B.R. 392, 296 (Bankr.S.D.N.Y.1982); *Johnston Memorial Hospital v. Hess*, 21 B.R. 465, 467 (Bankr.W.D.Va.1982); *Semmerling Fence & Supply, Inc. v. Ramos*, 8 B.R. 490, 496 (Bankr.W.D.Wis.1981). However, actual intent may be inferred from the debtor's actions.[6] *Daniels v. Keenan*, 19 B.R. 724, 725, 731 (Bankr.W.D.Mo.1982); *Lewis v. Bone*, 7 B.R. 549, 551 (Bankr.M.D. Ga.1980). Intent is rightfully inferred if the transfer is surrounded by badges or indicia of misconduct. *O'Connor v. O'Connor*, 32 B.R. at 628; *Aetna Insurance Co. v. Nazarian*, 18 B.R. 143, 150 (Bankr.D.Md.1982); *Nakagawa v. Sergio, Inc.*, 16 B.R. 898, 908 (Bankr.D.Hawaii 1981); *Loeber v. Loeber*, 12 B.R. 669, 675 (Bankr.D.N.J.1981). *Gennet v. Silver (In re Harry Kaiser Associates, Inc.)*, 14 B.R. 107, 109 (Bankr.S.D.Fla.1981); *Baltic Linen Co. v. Rubin*, 12 B.R. 436, 442 (Bankr.S. D.N.Y.1981); *Williams v. Riddle*, 8 B.R. 797, 798 (Bankr.S.D.Fla.1980). Among the "badges" to be considered are: (1) an absence of consideration for the transfer; (2) the value of the transfer as a component of the debtor's estate; (3) the timing of the

---

**5.** The debtor argues that his discharge should not be denied because the renunciation would not be a fraudulent conveyance under Tennessee law. The Tennessee Supreme Court has held that:

> As it was optionary ... to accept or renounce, it is immaterial what his motives were, so long as there is no collusion with the remaindermen or residuary devisees, by which he fraudulently receives a benefit for his renunciation.

*Bradford v. Calhoun*, 120 Tenn. 53, 109 S.W. 502, 504 (1908). *See also In re Hodge's Estate*, 20 Tenn.App. 411, 99 S.W.2d 561, 564 (1936) (motive of debtor and the absence of consideration is immaterial in determining validity of a renunciation). However, it is not determinative that the transfer may not constitute a fraudulent conveyance under state law. Though intent to defraud creditors does not invalidated the renunciation under state law, the consequences of the debtor's action must be measured under the Bankruptcy Code. The question whether the transfer satisfies the criteria set forth in § 727(a)(2)(A) is interpreted according to federal standards. *First Texas Savings Ass'n. v. Reed*, 700 F.2d 986, 991 (5th Cir.1983). That subsection does not require a finding that the transfer must be a state law fraudulent conveyance before it can be a basis to bar discharge in a bankruptcy case. There are many types of pre-bankruptcy transfers by debtors which would not be recoverable under applicable state law but which can be recovered or which form the basis for an attack on discharge under the Bankruptcy Code. The debtors' argument would be more appropriate were this a proceeding by the trustee under 11 U.S.C. § 544(b).

**6.** The inference is, of course, rebuttable. The debtor failed to rebut the evidence of intent in this proceeding.

transfer; (4) the relationship between the debtor and the transferee(s); (5) the financial condition of the debtor at the time of transfer; (6) whether the transfer was concealed; and (7) whether the conveyance was made while a collection lawsuit against the debtor was threatened or pending.

■ The facts of this case convincingly demonstrate the requisite intent. The renunciation was executed for no consideration. The debtor renounced a substantial interest in real property in which he held no exemptable interest; however, he retained an interest in exemptable personal property. The transfer was to and substantially benefitted family members. The renunciation was made while the debtor was under pressure from creditors, was in receipt of demand letters, and was the defendant in a state collection lawsuit. The renunciation was not revealed on the debtor's statement and schedule of financial affairs. At the meeting of creditors and again in his deposition, the debtor admitted that the renunciation was executed to keep his family from becoming embroiled in his financial problems. The debtor renounced with intent to keep the property within his family and out of the reach of his creditors. The totality of the circumstances demonstrates intent to hinder, delay or defraud creditors.

Accordingly, the debtor's discharge is DENIED.[7]

---

7. Because the court finds that the debtor's discharge should be denied pursuant to § 727(a)(2)(A), the court does not address the 11 U.S.C.A. § 727(a)(4) (West 1979) issue raised in the Bank's complaint.