**In re Richard Michael GROFF, Debtor.**

**Diane L. JENSEN, Trustee, Plaintiff,**

v.

**Richard Michael GROFF, Defendant.**

**Bankruptcy No. 96–15070–9P7.
Adversary No. 97–664.**

United States Bankruptcy Court,
M.D. Florida,
Ft. Myers Division.

Jan. 5, 1998.

Diane L. Jensen, Ft. Myers, FL, for Plaintiff.

Jeffrey W. Leasure, Ft. Myers, FL, for Defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 7 liquidation case and the matter under consideration is a challenge by Diane Jensen (Trustee) to the right of Richard Michael Groff (Debtor) to the overall protection of a general bankruptcy discharge. The Trustee's claims are set forth in a two-count Complaint. Count I alleges that the Debtor made a false oath in connection with his bankruptcy case and, therefore, forfeited his right to a discharge pursuant to 11 U.S.C. § 727(a)(4)(A). Count II alleges that the Debtor transferred his property, within one year of the filing of the Petition, with the intent to hinder, delay or defraud his creditors and, therefore, the Debtor is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2)(A).

The following facts are without dispute and were presented to this Court by stipulation of the parties.

The Debtor attended Indiana University and received a Bachelor of Science degree in 1965. In 1978, the Debtor received a degree in Certified Financial Planning from the College of Financial Planning. The Debtor held these degrees at the time the Bankruptcy Petition was filed. Additionally, the Debtor held Life Insurance Licenses from the States of Florida and Michigan and a Securities License from the State of Florida. The Debtor attended State and Federal courses for these Licenses. The Debtor has also attended locally sponsored continuing education credit programs for certified financial planning within the past five years.

In April 1995, the Debtor had four outstanding, unsatisfied judgments against him. These judgments were granted to the following parties: Avram Daniel $1,580,339.00; Capital Bank–Lendberg $577,680.00; Aloha Leasing $185,218.00; and Landmark Bank $1,334,817.00. The above-listed judgments were still outstanding as of November 4, 1996.

On or about December 1, 1995, the Debtor transferred his 1984 boat to Fort Myers Beach Marina for a $4,000 credit toward the purchase of a 1996 Chris–Craft boat which he then placed in his and Mrs. Groff's name. Then, in January 1996, the Debtor received a tax refund of $49,997.79 which was deposited into Account Number 4810–2401 (Schwab Account) at Charles Schwab & Company, Inc., owned by the Debtor and Mrs. Groff, as tenants by the entirety. On November 4, 1996, the Debtor filed his Petition for Relief under Chapter 7.

The Debtor failed to disclose the receipt of the tax refund on his Statement of Financial Affairs. Further, the Debtor failed to disclose in his Statement of Financial Affairs a series of fourteen checks which were written from the Schwab Account and which totaled in excess of $270,000. These checks were written for the purpose of purchasing, furnishing, decorating, and landscaping a Colorado residence, titled solely in Mrs. Groff's name. These checks were drawn between July 12, 1996 and September 25, 1996.

Additionally, the Debtor failed to disclose in Paragraph 2 of the Statement of Financial Affairs sale proceeds derived from sources other than employment or operation of his business. Specifically, the Debtor failed to make the following disclosures:

A. On or about June 28, 1995, the Debtor sold Mrs. Groff 2,000 shares of stock in Richard M. Groff Advisory Services Corporation for which he was paid $2,143.66.

B. On or about September 26, 1995, the Debtor sold Mrs. Groff his household furnishings for the sum of $10,000.00.

C. On or about September 26, 1995, the Debtor sold Mrs. Groff a 50% interest in his equity in the Bonita Bay Club Membership for $7,500.00.

D. On or about September 26, 1995, the Debtor sold Mrs. Groff a 50% interest in his membership in the Collier Athletic Club for the sum of $1,500.00.

E. On or about June or July of 1995, the Debtor sold Ted Kolodziej his stock in Richard M. Groff Associates, Inc., for the sum of approximately $89,000.00.

In addition, the Debtor failed to disclose in Section 16 of the Statement of Financial Affairs the fact that he was the sole shareholder and an officer and director of Richard M. Groff Advisory Services, Inc., within the two years prior to his filing the Chapter 7 Petition. The Debtor also failed to disclose that he owned 85% of the stock and was an officer and director of Richard M. Groff Associates, Inc., within the two years prior to filing his Chapter 7 Petition.

The record further reveals that in the past ten years the Debtor has been a general partner, stockholder and officer in several real estate corporations. The Debtor has been involved with Group I, Inc. and North Port, Inc., both of which were real estate businesses. However, the Debtor has received no income within the past ten years from these real estate corporations. The Debtor has received income from Richard M. Groff Advisory Services Corp. and Richard M. Groff Associates, Inc.

Based on the foregoing facts, it is the Trustee's contention that by virtue of 11 U.S.C. §§ 727(a)(4)(A) and 727(a)(2)(A) the Debtor is not entitled to a discharge because he committed a false oath in bankruptcy and fraudulently transferred property with intent to hinder or delay creditors.

The burden of proof is on the plaintiff objecting to the debtor's discharge. F.R.B.P. 4005. The standard of proof is no longer clear and convincing, but rather a mere preponderance of the evidence is sufficient to meet the burden. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In this connection, the provisions dealing with discharge of debtors must generally be construed liberally in favor of debtors and strictly against creditors. It is equally true, however, that Congress intended to grant a discharge only to the honest debtor and that the discharge provisions should be liberally applied to protect the debtor only where there was no intent to violate the provisions of the law dealing with discharge. *Kentile Floors, Inc. v. Winham,* 440 F.2d 1128 (9th Cir.1971); *Matter of Garman,* 643 F.2d 1252 (7th Cir.1980).

A debtor may be denied a discharge if he knowingly and fraudulently makes a false oath in connection with a bankruptcy case, pursuant to § 727(a)(4). The purpose of this Section is to provide the trustee and the creditor with reliable information in order to assist the trustee in the administration of the estate. *In re MacDonald,* 50 B.R. 255 (Bankr.D.Mass.1985).

### COUNT I

In the present instance, there is no doubt that the Debtor failed to disclose the receipt of a $49,997.79 tax refund on his Statement of Financial Affairs. Moreover, the Debtor failed to disclose in Section 16 of the Statement of Financial Affairs the fact that he was the sole shareholder of and an officer and director in a corporation, Richard M. Groff Advisory Services, Inc., within the two years prior to filing his Chapter 7 Petition. The Debtor also failed to disclose that he owned 85% of the stock and was an officer and director in a corporation known as Richard M. Groff Associates, Inc., within the two years prior to filing his Chapter 7 Petition.

The Debtor does not seriously contend that he disclosed the transfer of funds in the Statement of Financial Affairs. Rather, the Debtor contends that the funds transferred were received from the sale of capital assets and, therefore, did not represent income.

Concerning the nondisclosure of transfers, the Debtor contends that some of the nondisclosure was due to oversight and the remainder of nondisclosures were transfers by checks which were drawn on a joint account maintained by the Debtor and his non-debtor spouse as tenants by the entirety. Therefore, he was not required to disclose these transfers.

As to the income tax refund, the Debtor contends that the refund is attributable to a joint return which indicates that during the relevant years the income of his non-debtor spouse, Joan C. Johnson–Groff (Mrs. Groff), was greater than his income. For instance in 1996, the Debtor's gross adjusted income was $86,513.00 versus Mrs. Groff's gross adjusted income of $344,418.00. Moreover, the bulk of the funds deposited in the bank accounts were the funds of Mrs. Groff.

In considering the element of intent to commit a false oath, courts rely on the experience and expertise of the debtor. *In re Colburn*, 145 B.R. 851 (Bankr.E.D.Va. 1992); *In re Muscatell*, 113 B.R. 72 (Bankr. M.D.Fla.1990). The fact that the Debtor's omissions were intentional is supported by the fact that the Debtor is a sophisticated businessman.

While it is clear that an isolated omission or misstatement on the Statement of Financial Affairs would not be, by itself, enough to support a claim, pursuant to § 727(a)(4)(A), a pattern of numerous omissions and misstatements by a sophisticated Debtor who has a business background leads to a different result. Rather, such a pattern warrants the conclusion that these omissions were not mere oversights, but rather willful and knowing omissions. In light of the facts in this record, this Court is satisfied that the Debtor's omissions on his Statement of Financial Affairs were a clear violation of his obligation to make full disclosure. This record, therefore, warrants the denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

## COUNT II

To prevail on Count II, the Plaintiff must prove that a transfer of property occurred within one year of the filing of the Petition, that the property that was transferred was property of the Debtor and that at the time of the transfer the Debtor had the intent to hinder, delay or defraud a creditor. Evidence of actual intent is necessary to support a finding sufficient to deny discharge. *Matter of Reed*, 700 F.2d 986, 991 (5th Cir.1983); *In re Glaser*, 49 B.R. 1015 (S.D.N.Y.1985) (Constructive intent insufficient). Actual intent may be inferred from the debtor's actions and may be proven by circumstantial evidence. *Future Time, Inc. v. Yates*, 26 B.R. 1006 (M.D.Ga.1983), aff'd by, 712 F.2d 1417 (11th Cir.1983). In *In re Cooper*, 150 B.R. 462 (D.Colo.1993), the U.S. District Court for the District of Colorado found as follows.

> Various courts have identified a number of circumstances evidencing actual intent to defraud under section 727(a)(2)(A). They include: 1) the lack or inadequacy of consideration; 2) the family, friendship or close associate relationship between the parties; 3) the retention of possession, benefit or use of the property in question; 4) the financial condition of the party sought to be charged both before and after the transaction in question; 5) the existence of a pattern or series of transactions after the onset of financial difficulties, or pendency or threat of suits by creditors; 6) the general chronology of the events and transactions under inquiry.

*Cooper*, 150 B.R. at 465. *See Matter of Chastant*, 873 F.2d 89, 91 (5th Cir.1989).

This record provides clear evidence that the Debtor fraudulently transferred his property, within a year of filing his Petition, with the intent to hinder, delay or defraud creditors, pursuant to § 727(a)(2)(A). In April 1995, the Debtor had four judgments outstanding and these were still outstanding as of November 4, 1996. With knowledge of these outstanding judgments, the Debtor made the previously described transfers.

Based on the foregoing, this Court is satisfied that the Trustee has established with the requisite degree of proof all operating elements of the claims asserted in the Complaint. Therefore, this Court is satisfied that the Debtor's discharge should be denied, pur-

suant to 11 U.S.C. §§ 727(a)(4)(A) and 727(a)(2)(A).

A separate Final Judgment shall be entered in accordance with the foregoing.